# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BRYAN JONES and SARAH JONES,<br><br>Plaintiffs,<br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | No. C18-4084-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDMENT** |

This case is before me on a motion (Doc. No. 11) for summary judgment filed by defendant State Farm Fire and Casualty Company (State Farm). Plaintiffs Bryan and Sarah Jones filed a resistance (Doc. No. 15) and State Farm filed a reply (Doc. No. 16).[1] Oral argument is not necessary. *See* Local Rule 7(c).

## I. PROCEDURAL HISTORY

Plaintiffs commenced this action on September 4, 2018, in the Iowa District Court for Dickinson County. Doc. Nos. 1, 3. On October 3, 2018, State Farm filed a notice of removal (Doc. No. 1) to this court on the basis of diversity of citizenship. Plaintiffs assert claims for breach of insurance contract (Count I) and insurance bad faith (Count II). Doc. No. 3 at 2–3. Plaintiffs seek compensatory damages under the insurance contract and punitive damages under Iowa Code Chapter 668A. *Id.* at 3. Trial is scheduled to begin August 17, 2020.

---

[1] Because plaintiffs share the same last name, I will refer to them individually by their first names.

## II. SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there

is a genuine issue for trial.  *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).  The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law.  If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587–88.  Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts.  *Id*.  However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses."  *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004).  Instead, "the court's function is to determine whether a dispute about a material fact is genuine."  *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

### III.  RELEVANT FACTS

The following facts are undisputed for purposes of this motion unless otherwise noted:

In the early morning hours of November 11, 2017, a fire occurred in plaintiffs' home in Milford, Iowa, that originated from a toaster in their kitchen.  Doc. No. 11-1 at 1, 7.  According to Sarah, she awoke at 4:02 a.m. due to noises coming from her kitchen.  *Id*. at 2.  After failing to determine the cause of the noise from camera feed on her phone, she opened her bedroom door to go to the kitchen.  *Id*.  She could only see "white" outside the door.  *Id*.  After closing and reopening the door she began to smell smoke.  *Id*.  She went to the kitchen, saw flames and then went to gather her children.  *Id*.  She claims that smoke alarms began going off as she and her children were leaving the house.  *Id*.  She told her children to call 911 and proceeded to call Bryan from her cell phone.

*Id.* Bryan had left the home sometime between 3:40–3:55 a.m. and had not noticed any indication of a fire at that time. *Id.* at 3. Sarah and her children sat in their van to wait for the fire department. *Id.* Sarah posted a video of the fire to Facebook at 4:17 a.m. *Id.*

The Milford Fire Department (MFD) received the fire call at 4:10 a.m. and arrived at the home at 4:20 a.m. *Id.* After extinguishing the fire and entering the home's kitchen, Shane Langholz, a volunteer firefighter, observed a fluffy and flaky "block, almost square . . . three to four inches thick" on top of the toaster. *Id.* at 6–7 (quoting Doc. No. 11-3 at 150–51). He thought it was some sort of paper product. *Id.* at 6. He also observed that "[o]ne knob of the toaster was stuck down." *Id.* (quoting Doc. No. 11-3 at 152). Langholz then asked Jim Carpenter, MFD's Chief, to observe the "strange-looking ash pattern on top of the toaster." Doc. No. 11-3 at 148. Carpenter saw something "kind of light and fluffy, more like tissue paper or something laying across the top of the toaster." *Id.* at 6 (quoting Doc. No. 11-3 at 148). It was layered and fluffy and about an inch or inch and a half thick. *Id.* He thought the ash was very strange. *Id.*

In his official report, completed day of the fire, Carpenter recorded that the cause of the fire was "undetermined" and the source of ignition "unintentional." Doc. No. 15-2 at 1. He also wrote that there did not appear to be any human factors that contributed to the fire. *Id.* No one had been smoking in the house and no candles were being used. Doc. No. 11-1 at 3. Bryan denied using the toaster that morning and stated the last known use occurred the previous afternoon. *Id.*

Two weeks before the fire, plaintiffs purchased a homeowner's policy from State Farm. *Id.* They submitted their insurance claim to State Farm on the day of the fire. *Id.* at 1.

Nine days after the fire, George Howe, a fire inspector, examined the damage in the home. Doc. No. 11-1 at 7. He concluded that the fire originated along the wall behind the toaster on the countertop. *Id.* He believed that the fire was caused by an electrical malfunction with the toaster's cord because "plug blades for the power cord on

4

the toaster were arced off inside the electrical outlet." *Id.* He did not observe any identifiable remains of paper products inside of or on top of the toaster. Doc. No. 15-2 at 2. However, State Farm notes that the unusual material on top of the toaster was inadvertently destroyed before Howe's investigation when firefighters performed some demolition in the home. Doc. No. 16-1 at 3.

Eleven days after the fire Rosanna Swart, a former co-worker of Sarah's, contacted State Farm with concerns about Sarah's comments and behavior after the fire. Doc. No. 11-1 at 1. In a recorded statement to Stacy Niemann, an investigator for State Farm, Swart said she saw Sarah shopping with her children only hours after the fire. *Id.* at 4. Swart stated that Sarah was purchasing unseasonal clothing and appeared "nonchalant" about the fire earlier that morning. *Id.* Sarah did not appear disappointed and, in fact, seemed "upbeat," "exuberant" and "happy to be shopping." *Id.* at 5. Swart stated that Sarah told her the fire started at the toaster in the kitchen. *Id.*

Sarah denies that she was nonchalant or overly happy while shopping. Doc. No. 15-1 at 1. She claims she was trying to maintain a positive attitude for the benefit of her children. *Id.* at 2. She also denies that she was buying unseasonal clothing, as she was simply buying items, including sandals from a clearance rack, to replace clothing damaged by the fire. *Id.* at 1. She admits she told Swart that the fire began at the toaster but states that she was only repeating what Carpenter had told Bryan about the origin of the fire. *Id.* at 2.

Swart also told Niemann about suspicious comments Sarah had allegedly made to Rosemary Shaughnessy, another of Sarah's former co-workers. Thus, Niemann contacted Shaughnessy as well. Doc. No. 11-1 at 5. Shaughnessy told Niemann that Sarah had made statements to her that one could start a fire by placing tissues in a toaster and that toasters were the number one source of fires in a home. *Id.* at 5–6. Jenny Schiltz, another former co-worker who spoke with Niemann, also reported that Sarah had said that sticking tissue paper in a toaster could start a fire. *Id.* at 6. Sarah denies that she ever made statements about starting a fire by putting tissues in a toaster, though

she admits that she made the statement about toasters being a common source of house fires, a fact she had recently learned from someone else. Doc. No. 15-1 at 3. Plaintiffs assert that they did not start the fire or help anyone else do so. Doc. No. 15-2 at 3.

Based on these reports from Sarah's acquaintances, and plaintiffs' own reports, State Farm decided to further investigate the fire. Doc. No. 11-1 at 7. It hired Dan Choudek, an electrical engineer, to determine whether the fire had been caused by an electrical malfunction with the toaster. *Id.* Choudek ultimately concluded that the toaster had not malfunctioned. *Id.* He stated that the arcing identified by Howe was a result of the fire, not an internal defect of the toaster. *Id.* He did not find any product recalls, or other reported issues, that would cause him to suspect the toaster started the fire on its own. *Id.* at 8. His own testing also did not indicate that simple operation, or even a malfunction, of the toaster could produce sufficient heat or flame height to ignite surrounding items in the kitchen. *Id.* However, the testing revealed that a paper product inside the toaster, along with a tall fuel source on top of the toaster (such as a vertical-standing paper-towel roll), created sufficient heat and flame height to ignite cabinets above the toaster within approximately four minutes. *Id.*; Doc. No. 15-1 at 4.

State Farm asked Howe to review Choudek's findings. Doc. No. 11-1 at 9. Howe agreed with Choudek that his previous conclusion regarding arcing in the toaster's electrical cord was incorrect and deferred to Choudek's finding that neither the cord nor the plug caused the fire. *Id.*; Doc. No. 11-3 at 185. Based on his prior investigation, as well as Choudek's findings, Howe concluded that it was "possible" that the fire was caused by paper products being put in and on top of the toaster, as was done during Choudek's test. Doc. No. 11-1 at 9. However, based on standards set by the National Fire Protection Association (NFPA), Howe concluded that the cause of the fire must be classified as undetermined. Doc. No. 15-2 at 2.

Based on its investigation, which revealed additional information that will be discussed below, State Farm concluded that the plaintiffs intentionally started the fire. Doc. No. 11-1 at 9. Accordingly, it denied the insurance claim on three grounds: (1)

"the fundamental insuring agreement had not been met" because the fire was not accidental, (2) the plaintiffs violated the policy's intentional acts exclusion by intentionally starting the fire and (3) the contract was void due to the plaintiffs' concealment and fraud regarding the fire. *Id.* at 11.

Other relevant facts will be discussed as necessary.

## IV. DISCUSSION

As noted above, plaintiffs assert claims for breach of insurance contract and insurance bad faith and seek both compensatory and punitive damages. State Farm argues that it is entitled to summary judgment on the breach of contract claim because the fire that caused plaintiffs' damages was not accidental and, therefore, either not covered under the policy or subject to a policy exclusion. State Farm also argues that regardless of whether there is a genuine issue of fact as to the breach of contract claim, it is entitled to summary judgment on plaintiffs' bad faith claim because it had a reasonable basis for denying the plaintiffs' claim. It further asserts that the plaintiffs' punitive damages claim fails with the bad faith claim because a plaintiff cannot recover punitive damages for breach of contract alone. For the reasons set forth below, I find that State Farm did not breach the contract because the plaintiffs have failed to raise a genuine issue of material fact as to whether the fire was accidental. This finding disposes of both claims.

Under Iowa law,[2] a party claiming a breach of contract must prove the existence, terms, and conditions of the contract, that he has performed all of the terms and conditions required under the contract, and that the defendant breached the contract and caused him damages. *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). A breach occurs when a party fails to perform part of the contract without legal excuse. *Id.* Questions of performance or breach are generally for the jury. *See,*

---

[2] Neither party contends that the law of any state other than Iowa applies to plaintiffs' claims in this diversity action.

*e.g.*, *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993); *Taylor Enter., Inc. v. Clarinda Prod. Credit Ass'n*, 447 N.W.2d 113, 115 (Iowa 1989). However, the construction of the contract and the interpretation of contractual terms, unless dependent on extrinsic evidence, are issues for the court. *Iowa–Illinois Gas & Elec. Co.*, 497 N.W.2d at 825.

State Farm argues that it is entitled to summary judgment because plaintiffs, as a matter of law, cannot establish that State Farm breached the insurance contract. Doc. No. 14 at 12. It asserts that three provisions in the policy provide valid grounds for denying plaintiffs' claim. First, it notes that the policy's insuring clause covers only "accidental direct physical loss to property." Doc. No. 14 at 12-13. State Farm contends that plaintiffs' failure to establish that the fire was accidental means that the policy does not cover their loss. *Id.* at 13–16; Doc. No. 16 at 2.

Second, even if the policy otherwise provided coverage, it excludes coverage for intentional acts by the insured:

> If you or any person insured under this policy cause or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.

Doc. No. 11-3 at 78. The policy also contains a concealment or fraud provision, which states:

> This entire policy shall be void if, whether before or after a loss, an insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of an insured therein, or in case of any fraud or false swearing by an insured relating thereto.

*Id.* at 54. State Farm contends both of these exclusion provisions apply because plaintiffs intentionally set the fire and fraudulently concealed their involvement.

Plaintiffs argue that State Farm is not entitled to summary judgment because there are genuine issues of material fact as to whether the fire was accidental. Doc. No. 15-3 at 7. They also argue that some of the evidence State Farm relies upon to show plaintiffs'

8

alleged motive and ability to intentionally set the fire is inadmissible. *Id.* at 9–11. Regardless, they deny that they intentionally caused the fire, directly or indirectly. Doc. No. 15-2 at 3.

The policy provisions State Farm cites present the common question of whether the fire was accidental. Under Iowa law, there is no single definition for the term "accident" or "accidental" in insurance policies. *Am. Fam. Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 580–81 (Iowa 2004). The meaning of accidental typically depends on its common usage, the context of the policy, the viewpoint of the victim and relevant public policy considerations. *Id.* at 580–82; *see also Lickleider v. Iowa State Traveling Men's Ass'n*, 166 N.W. 363, 365 (Iowa 1918) ("[T]he words 'accident' and 'accidental' have never acquired any technical meaning in the law, and when used in an insurance contract they are to be construed and considered according to the common speech and common usage of people generally."). Despite slight variations in interpretation, the Iowa Supreme Court has generally interpreted "accidental" to mean unplanned, unintentional and unexpected by the person to whom the event occurs. *Petersen*, 679 N.W.2d at 580–82. Therefore, the question is whether a reasonable jury could find that the fire at plaintiffs' home was unplanned, unintentional and unexpected by the plaintiffs.

As the summary judgment movant, State Farm has met its initial burden on this question by "identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). State Farm has produced evidence, including expert opinions, demonstrating that this fire was not accidental and, indeed, could not have been accidental. Both Langholz and Carpenter, who were on the scene immediately after the fire, observed a fluffy layered material on the toaster that appeared to be a paper product. Langholz noted that the toaster was in the engaged, or "on," position. Plaintiffs do not dispute, or explain, this troubling evidence.

In addition, Choudek – an electrical engineer who analyzed the fire and performed several tests to determine its cause – opined that a toaster malfunction, on its own, could

9

not have caused the fire. Specifically, he concluded that the home's electrical system did not play a role in the fire, electrical arcing events in the toaster's cord did not cause the fire (but instead were caused by the fire), this particular model of toaster had no history of malfunctions or recall notices and, even if the toaster malfunctioned, it could not, without additional fuel load, produce sufficient heat or flame height to ignite the cabinets in the kitchen. Howe, a fire inspector who also investigated the incident, agrees with these findings.

Because of the suspicious, paper-like material that was observed on top of the toaster after the fire, Choudek conducted various tests to determine whether paper products in and on the toaster could have started the fire. He was able to devise one configuration that did so. Howe reviewed those results and concluded it was possible that the fire was intentionally started with paper in and on the toaster.

Plaintiffs, by contrast, have produced no expert opinion evidence that the fire was accidental. Indeed, apart from their own denials, they rely primarily on Carpenter's initial conclusions about the fire and Howe's "undetermined" classification to resist the entry of summary judgment. As noted above, on the day of the fire Carpenter marked that the fire's origin was unintentional and that there were no apparent human factors contributing to ignition. He did not request an inspection by the state fire marshal. Even after learning of State Farm's evidence, Carpenter stated that he could not say or prove that the fire was not accidental. Plaintiffs also note that Howe stated the cause of the fire should be classified as undetermined under NFPA standards. Plaintiffs argue that these facts provide a genuine issue for trial as to whether the fire was accidental.

I disagree. When considering Carpenter's and Howe's testimony and findings in their entirety, the specific statements plaintiffs rely on do little more than create metaphysical doubt about whether the fire was accidental. *See Matsushita*, 475 U.S. at 586. Although Carpenter stated that he could not prove that the fire was not accidental, he also noted that he had suspicions about the plaintiffs' involvement in the fire and affirmed that he thought someone "must have acted on the toaster." Doc. No. 16-2 at 7.

He also stated that the substance he observed on the toaster "very possibly" was a combustible paper product. *Id.*

As for Howe, while he stated that the fire's cause should be classified as undetermined under NFPA standards, he also deferred to Choudek's findings that the fire began at the toaster, rather than in its cord or at the plug, and that a malfunction in the toaster, without additional fuel, could not have started the fire. Choudek's various tests revealed that paper products placed in and on a toaster could have caused the fire.

In short, there is undisputed evidence that the fire started at the toaster, that a paper-like material was observed on top of the toaster after the fire and that the toaster was in the "on" position. There is also unrebutted expert opinion evidence that a defect in the toaster, or in the home's electrical system, could not have caused the fire and that the fire could have been started by putting paper products in and on the toaster. On this record, and regardless of plaintiffs' denials, no reasonable jury could find that the fire was accidental. As such, and as a matter of law, State Farm did not breach the insurance contract by denying coverage for the loss that resulted from the fire.

This outcome holds true regardless of which party would bear the burden of proof at trial. In general, under Iowa law, the party seeking coverage under an insurance policy bears the initial burden of demonstrating that the claim complies with the policy's terms. *See, e.g., Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991). By contrast, the insurer bears the burden of showing that a coverage exclusion applies. *Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 41 (Iowa 2012). Because State Farm has demonstrated, as a matter of law, that the fire was not accidental, the claim does not fall within the policy's insuring clause. The record also demonstrates that the intentional acts exclusion applies. Choudek's tests, combined with the fire fighters' testimony regarding the paper-like substance on the toaster and the toaster being in the on position, all indicate that the toaster was used as an instrument to intentionally start the fire. Even Carpenter, whose testimony plaintiffs rely upon, concluded that someone "must have acted on the toaster." Doc. No. 16-2 at 7.

By contrast, plaintiffs have provided no evidence, aside from their own denials, from which a reasonable jury could find that the intentional acts exclusion does not apply. They have provided no explanation for the paper-like substance discovered on top of the toaster – neither what it was nor how it arrived there. They have provided no expert opinion evidence to rebut State Farm's evidence and show that the fire could have started accidentally. Nor have they presented evidence from which the jury could find that someone else started the fire. As a matter of law, the intentional acts exclusion applies.[3]

In short, plaintiffs have failed to show that their claim is covered under the policy and, in any event, State Farm has shown that the claim is excluded by the intentional acts provision.[4] State Farm is therefore entitled to summary judgment on plaintiffs' claim for breach of the insurance contact. Because the bad faith and punitive damages claims cannot survive absent a breach of the insurance contract, State Farm is entitled to summary judgment on those claims as well.

## V. CONCLUSION

For the reasons set forth herein:

---

[3] Because State Farm is entitled to summary judgment pursuant to both the insuring clause and the intentional acts exclusion, I will not address the third provision State Farm relies upon (the fraud or concealment clause).

[4] Plaintiffs dispute the admissibility of certain other evidence State Farm discovered during its investigation. For example, plaintiffs were experiencing serious financial difficulties, Bryan has a prior arson conviction, Sarah had submitted a prior fire loss claim and Bryan had once reported a vehicle stolen but it was located a short distance away and had been set on fire. *See* Doc. No. 11-1 at 9–10. It is not necessary to consider this evidence to conclude that plaintiffs have failed to meet their burden of producing evidence from which reasonable jurors could find that the fire was accidental or that they did not intentionally start the fire. As such, I need not resolve the admissibility issue. I do note that evidence of these additional facts would almost certainly be relevant, at minimum, for purposes of determining whether State Farm acted in bad faith in denying coverage, if that claim could otherwise proceed to trial.

1. State Farm's motion (Doc. No. 11) for summary judgment is **granted** as to all claims.
2. This action is hereby **dismissed** and judgment **shall enter** in favor of State Farm and against plaintiffs.
3. The trial of this case, currently scheduled to begin August 17, 2020, is hereby **cancelled**.
4. The Clerk of Court shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 6th day of April, 2020.

_____
Leonard T. Strand, Chief Judge